921 F.2d 969
 136 L.R.R.M. (BNA) 2089, 117 Lab.Cas. P 10,475
 Elizabeth H. DOLE*, Secretary of Labor, United
States Department of Labor, Plaintiffs-Appellees,
v.
LOCAL UNION 375, PLUMBERS INTERNATIONAL UNION OF AMERICA,
AFL-CIO; J.L. Arsenault, an individual; Political,
Educational Legislative, Charity and Defense Fund of
Plumbers Local Union 375, AFL-CIO, a/k/a Voluntary Fund,
Defendants-Appellants.
 No. 90-35111.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1990.
Decided Dec. 28, 1990.
 
 William K. Jermain, Jermain, Dunnagan & Owens, Anchorage, Alaska, for defendants-appellants.
 Robert D. Kamenshine, U.S. Dept. of Justice, Washington, D.C., for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before TANG, O'SCANNLAIN and LEAVY, Circuit Judges.
 TANG, Circuit Judge:
 INTRODUCTION
 Acting pursuant to its authority under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Secs. 401 et seq. ("LMRDA"), the Department of Labor commenced in 1986 a routine compliance audit of Local Union 375, Plumbers International Union of America, AFL-CIO ("the Union"). In the course of this audit, the Department uncovered a series of questionable financial transactions between the Union and the Political, Educational, Legislative, Charity and Defense Fund of the Union ("the Fund").
 Specifically, the Department's inquiries revealed that the Union made two interest free loans of $10,000 each to the Fund in the first two months of 1981. The Department further discovered two reimbursements made by the Union to the Fund for advances the Fund apparently made on behalf of the Union. In February 1983, the Union repaid the Fund $6,000 for a deposit it had previously paid to secure a Union fishing trip. In December 1983, the Union refunded $500 that the Fund had advanced for a relief map given as a gift to the Governor of Alaska. The Department also learned that the sole administrator of the Fund, J.L. Arsenault, was the Secretary-Treasurer of the Union. The Union's bookkeeper, Yvonne Cox, also served as the Fund's bookkeeper.
 
 
 1
 Inconsistencies in the Fund's identification of itself further piqued the Department's interest. The Fund had persistently refused to register as a "group" with the Alaska Public Offices Commission, insisting that it was a "labor organization" instead. At the same time, the Fund failed to file reports with the Department of Labor, claiming it was not a "union fund" within the meaning of the LMRDA. No constitution, bylaws, articles of incorporation, trust agreement, or other organic documents pertaining to the Fund have ever been found.
 
 
 2
 At this point, the Department determined that it would further investigate the propriety of the Fund's refusal to file as a "union fund" under the LMRDA. The Department issued a number of subpoenas to the Fund, Mr. Arsenault, and Ms. Cox, seeking financial records detailing the Fund's operations, including the sources of its funding. The parties do not dispute that the subpoenas encompass documents that would reveal the names of Fund contributors.
 
 
 3
 When Mr. Arsenault and Ms. Cox refused to comply with the subpoenas on first amendment grounds, the Department initiated an action to enforce the subpoenas in federal district court in Alaska. The district court's July 1987 order, rejecting the Fund's first amendment claims and enforcing the subpoenas, occasioned the first appeal to this court. In October 1988, this court reversed the district court's order of enforcement and remanded for a hearing to determine whether "a prima facie showing of arguable first amendment infringement" could be shown. Brock v. Local 375, Plumbers Int'l Union of America, 860 F.2d 346, 349 (9th Cir.1988) (quoting United States v. Trader's State Bank, 695 F.2d 1132, 1133 (9th Cir.1983)). We instructed that, in order to prevail on remand, the Fund would have to "demonstrate that enforcement of the subpoenas will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of the members' associational rights." 860 F.2d at 350. Once the Fund made such a showing, the burden would shift to the Department to demonstrate that the subpoenas were "rationally related to a compelling governmental interest" and were the least restrictive means of obtaining the needed information. Id.
 
 
 4
 When invited on remand to present a prima facie case of first amendment infringement, the Fund introduced an affidavit by J.L. Arsenault, a report from the company's auditors documenting a rather precipitous decline in the Fund's contributions,[1] and two newspaper clippings discussing the Department's investigation.[2] The district court ruled that this evidence did not create a prima facie case of unconstitutional entrenchment on associational rights. It held that the Fund had failed to follow the Ninth Circuit's admonition that its evidence of a first amendment chill be objective. The court characterized Mr. Arsenault's affidavit as "nothing more than an opinion--his conclusion." Brock v. Local 375, No. A87-206 Civil, Order at 7, 1989 WL 201631 (D. Alaska Dec. 7, 1989) (Order Enforcing Subpoenas, Again) ("Order"). The court further noted that "[c]onspicuously absent from Mr. Arsenault's affidavit are any articulable facts" linking the decline in revenues with the Department's efforts to subpoena contributor lists. Order at 8. The lack of any membership data or evidence supporting a well-founded fear of harassment or reprisals reinforced the court's ultimate conclusion:
 
 
 5
 The showing of the union and the Fund is conclusory and speculative. There is no factual, objective demonstration that there has been or is likely to be harassment or membership withdrawal because of the enforcement of the subpoena. Undeniably, there has been a change in the Fund, but defendants have simply left the court to speculate about why that change took place.
 
 
 6
 Order at 9.
 
 
 7
 Finding no prima facie evidence of a first amendment violation, the district court found it unnecessary to inquire into the question of whether the information sought by the subpoenas was rationally related to a compelling governmental interest, and entered an order enforcing the subpoenas. Shortly thereafter, the Fund noticed its appeal to this court.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 8
 An order of a district court enforcing agency subpoenas represents a final order within the meaning of 28 U.S.C. Sec. 1291 and is thus appealable. McLaughlin v. Service Employees Union, AFL-CIO, Local 280, 880 F.2d 170, 173 (9th Cir.1989).
 
 
 9
 We review de novo the question whether the evidence presented constitutes a prima facie case of first amendment infringement. See Carreras v. City of Anaheim, 768 F.2d 1039, 1042 n. 2 (9th Cir.1985).
 
 DISCUSSION
 I. The Fund's Prima Facie Showing
 
 10
 The court's earlier opinion in this case outlined for the Fund the type of showing it would have to make in order to prevail on remand:
 
 
 11
 This prima facie showing requires appellants to demonstrate that enforcement of the subpoenas will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of the members' associational rights.
 
 
 12
 Brock, 860 F.2d at 350. We then noted that courts generally have demanded the presentation of "objective and articulable facts, which go beyond broad allegations or subjective fears." Id. at 350 n. 1.
 
 
 13
 Brock 's prima facie test has two tiers. First, the Fund must demonstrate a causal link between the disclosure and the prospective harm to associational rights. Second, the Fund must demonstrate that it is the type of association where exposure could incite threats, harassment, acts of retribution, or other adverse consequences that could reasonably dissuade persons from affiliating with it. The evidence presented by the Fund to the district court did neither.
 
 A. The Causal Nexus
 
 14
 The Fund's documentation--the affidavit, auditor's report, and news articles--fail to establish that enforcement of the subpoenas will cause harm to its contributors' associational rights. The auditor's report simply records a decrease in annual contributions. No causal explanation for the decline is tendered. Similarly, the news articles simply report the fact of the government's investigation, without delving into the possible impact of the investigation on membership. Only the last paragraph of Mr. Arsenault's affidavit touches upon the question of causation. That paragraph reads, in pertinent part:
 
 
 15
 That as a direct result of the action of the U.S. Department of Labor in attempting to gain contribution lists, the Voluntary Fund has, for all intents and purposes, ceased to exist. Little or no contributions have been received.... Contributions to the Fund have virtually dried up because of the controversy surrounding the Fund and particularly the potential disclosure of the names of individuals desiring to support the goals of the Voluntary Fund.... For all intents and purposes, because of the actions of the U.S. Department of Labor in seeking the records of this Fund, the Fund has ceased to exist as a viable entity for the purposes of making political, educational, legislative, charitable, and union goal-oriented expenditures.
 
 
 16
 While the affidavit thus discusses the issue of causation, it proffers no "objective and articulable facts" demonstrating that enforcement of the subpoenas will impact upon first amendment rights. The statements are wholly conclusory. Indeed, the affidavit suggests that the decline in contributions was caused (at least in part) by publicity surrounding the investigation, rather than the threat of subpoena enforcement per se. To the extent there has been a "chill" in affiliations with the Fund, the affidavit provides the court no assistance in allocating responsibility for that chill between the general investigation (the propriety of which the parties do not contest here) and the particular threat of disclosure of contributors' names through the subpoenas.
 
 
 17
 The district court correctly observed, moreover, that the affidavit does not even allege a reduction in membership. For all this affidavit shows, membership could have remained stable or even increased throughout the course of the investigation. The Fund's evidence shows only that monetary contributions have declined.[3]
 
 
 18
 Case law amply demonstrates the inadequacy of such a showing. Under quite similar circumstances, this court rejected a union's attempt to defend against a Department of Labor subpoena with an affidavit containing only "[b]are allegations of possible first amendment violations." McLaughlin, 880 F.2d at 175. Echoing Brock, this court instructed that "[t]he record must contain 'objective and articulable facts, which go beyond broad allegations or subjective fears.' " Id. (quoting Brock, 860 F.2d at 350 n. 1). Because the affidavit submitted by the Union argued, rather than evidenced, a chill on association, the court concluded that a prima facie case had not been presented.
 
 
 19
 In St. German of Alaska Eastern Orthodox Catholic Church v. United States, 840 F.2d 1087 (2d Cir.1988), the Church opposed enforcement of IRS summonses on first amendment grounds.[4] In an affidavit, the head of the church, like Mr. Arsenault, asserted that the Church had suffered from a significant drop in the number of contributions since the commencement of the IRS's investigation. Id. at 1093. The Second Circuit held that the Church had not presented a prima facie case of first amendment infringement because such allegations "[did] not establish that the IRS investigation is the cause of these problems." Id. As in this case, the fall-off in the Church's donations could have as easily been attributed to publicity surrounding the investigation. Id.
 
 
 20
 Similarly, in O'Neal v. United States, 601 F.Supp. 874, 880 (N.D. Ind.1985), cited in Brock, 860 F.2d at 350, the district court held that conclusory affidavits failed to prove a prima facie case of first amendment infringement because they did not explain in any detail "how the summons has actually impacted (or threatens to impact)" on the organization's activities. Id.
 
 
 21
 Finally, Master Printers of America v. Donovan, 751 F.2d 700, 705 (4th Cir.1984), cert. denied, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 52 (1985), stands for the proposition that a prima facie case of infringement on associational rights cannot rest upon "casual reference[s]" to, let alone unarticulated implications of, a decline in membership. A prima facie showing entails, instead, "a careful documentation" of membership decline--something wholly lacking from the Fund's evidence. Id.
 
 
 22
 The Fund's evidence demonstrating a decline in contributions coincident with the start of the Department's investigation, without more, does not satisfy the first tier of the Brock test. Documenting a result does not prove its cause.
 
 B. Evidence of Harassment
 
 23
 The Fund's evidence is equally devoid of objective facts indicating a well-founded fear of threats, harassment, or other adverse consequences if its contributor list is disclosed. Neither the auditor's report nor the news articles even speaks to this issue. The affidavit, moreover, contains no allegations of, let alone facts demonstrating, prior or threatened harassment of members by the government or the public. Although the Fund claims to be political, it does not claim to be politically weak, politically unpopular, or politically disadvantaged. Cf. Brown v. Socialist Workers '74 Campaign Comm., 459 U.S. 87, 99-100, 103 S.Ct. 416, 423-24, 74 L.Ed.2d 250 (1982); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462-63, 78 S.Ct. 1163, 1171-72, 2 L.Ed.2d 1488 (1958).
 
 
 24
 The factual gaps in the Fund's evidence are fatal to its case. A subjective fear of reprisal is insufficient to invoke first amendment protection against a disclosure requirement. See Buckley v. Valeo, 424 U.S. 1, 71-72, 96 S.Ct. 612, 659-60, 46 L.Ed.2d 659 (1976); Brock, 860 F.2d at 350 n. 1; In re Grand Jury Proceeding, 842 F.2d 1229, 1235 (11th Cir.1988).
 
 
 25
 The Fund, in essence, equates the mere fact of disclosure with a first amendment chill. The cases in which the Supreme Court has recognized a threat to first amendment associational rights, however, have consistently required more than an argument that disclosure leads to exposure. Parties like the Fund must demonstrate that exposure either is itself inherently damaging to the organization or will incite other consequences that objectively could dissuade persons from affiliating with the organization. In Brown v. Socialist Workers Comm., 459 U.S. at 98-100, 103 S.Ct. at 423-24, the Supreme Court found a first amendment violation where disclosure of names in the past had provoked hate mail, property destruction, harassment by government officials, and employment termination. Likewise, in NAACP v. Alabama, 357 U.S. at 462, 78 S.Ct. at 1172, an infringement of first amendment rights was found because the NAACP showed that "on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility."
 
 
 26
 The Fund not only failed to demonstrate its members' susceptibility to harassment, but also neglected to explain how its subjective fear of reprisals could be realized, given that Department policy protects the subpoenaed information from public disclosure. See McLaughlin, 880 F.2d at 175. The government will disseminate the information only on a "need to know" basis. Id. As a result, the Fund needed to establish that its members legitimately feared retribution by those few governmental employees who would have access to its records. No such showing has been made in this case. Cf. Shelton v. Tucker, 364 U.S. 479, 486, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960) (first amendment infringement found because, in part, statute requiring disclosure did not keep information confidential); Doe v. Martin, 404 F.Supp. 753, 761-62 (D.D.C.1975) (three-judge court) (disclosure limited to interested and affected agencies is "a lesser intrusion on privacy than reports made public to the world at large").
 
 
 27
 In sum, the Fund's evidence falls short of the "objective and articulable facts" necessary to satisfy either tier of Brock 's prima facie test. The Fund established no causal nexus between the threatened enforcement of the subpoenas and a decline in contributions. Nor did the Fund tender evidence supporting a well-founded fear that disclosure of its contributor list to a narrow group of Department employees would discourage membership or substantially frustrate the organization's operations. Evidence arguing, rather than factually documenting, an alleged chill of associational freedom does not warrant quashing otherwise legitimate administrative subpoenas.
 
 II. The Compelling Governmental Interest
 
 28
 Because the Fund did not make out a prima facie case of first amendment infringement, this court need not decide if the subpoenas rationally promote a compelling governmental interest. A court "may not intervene in an investigation, notwithstanding an allegation of interference with speech and associational rights, in the absence of a prima facie showing of actual past or threatened infringement." McLaughlin, 880 F.2d at 175.
 
 CONCLUSION
 
 29
 We affirm the district court's order enforcing the subpoenas. The Fund failed to present prima facie evidence of a first amendment violation. The Fund has not causally correlated the threatened enforcement of the subpoenas with its decline in contributions or any other objective indicia of an associational chill. Nor has it demonstrated that it is the type of organization for which limited disclosure to a select group of government employees is anathema. The lack of evidence of a constitutional violation relieves the Department from the obligation to demonstrate that its subpoenas are narrowly tailored and rationally related to a compelling governmental interest.
 
 
 30
 AFFIRMED.
 
 
 
 *
 Elizabeth Dole was substituted as plaintiff/appellee for William Brock pursuant to this court's order of June 28, 1990. Fed. R. App. P. 43(c)
 
 
 [1]
 The auditor's report showed voluntary contributions in the amount of $24,458 in 1985; $27,079 in 1986; $1,405 in 1987; and $1,995 in 1988
 
 
 [2]
 The parties and court had previously agreed to resolve the first amendment question on the basis of affidavits and depositions, rather than through an evidentiary hearing
 
 
 [3]
 Indeed, the Fund's own evidence attributes the drop in contributions to an economic downturn resulting in unemployment for its contributors
 
 
 [4]
 The church raised both freedom of religion and freedom of association grounds