Elizabeth H. DOLE, Secretary of Labor, United States Department of Labor, Petitioner–Appellant,

v.

SERVICE EMPLOYEES UNION, AFL–CIO, LOCAL 280, Respondent–Appellee.

No. 90–55309.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1991.

Decided Dec. 11, 1991.

Stuart M. Gerson, Asst. Atty. Gen., Leonard Schaitman, Robert D. Kamenshine, U.S. Dept. of Justice, Washington, D.C., for petitioner-appellant.

Victor Van Bourg, Sandra Rae Benson, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for respondent-appellee.

Before TANG, REINHARDT and WIGGINS, Circuit Judges.

REINHARDT, Circuit Judge:

The Secretary of Labor ("the Secretary") appeals the district court's grant of a protective order limiting the manner in which the Department of Labor ("the Department") may conduct its investigation of the Service Employees Union, AFL–CIO, Local 280 ("the Union"). The district court granted the protective order because it found that the investigation would interfere with the speech and associational rights of the Union members. We hold that the Union met its burden of establishing a *prima facie* case of first amendment infringement, and was entitled to a protective order. We hold further that the particular order issued by the district court was broader in scope than permissible. Accordingly, we affirm in part, reverse in part, and remand.

## BACKGROUND

In April, 1986, the Los Angeles Area Administrator of the Labor–Management Reporting and Disclosure Act (LMRDA) initiated an investigation of the Union to determine whether Union officials had misused Union credit cards and altered financial records in violation of the LMRDA, 29 U.S.C. §§ 401–531. As part of that investigation, in February, 1987, the Acting Area Administrator of the Department issued a subpoena duces tecum requiring the Union's custodian of records to appear at a Department office and to bring with him various financial records as well as minutes of executive board and membership meetings and all bylaw changes from January 1, 1981 through June 30, 1986.

The Union refused to comply with the subpoena except on the terms set forth in a protective order in an unrelated case in the district court for the Northern District of California. The Secretary rejected the Union's terms and filed a petition in the district court seeking enforcement of the subpoena. The Union answered the Secretary's petition by stating that enforcement would violate the first amendment rights of the Union and its members. In support of its position, the Union filed the declaration of its attorney, Victor J. Van Bourg, which stated that unrestricted administrative review of the minutes of Union meetings would chill the exercise of the first amendment rights of the Union and its members.

The district court granted the Secretary's motion for enforcement of the subpoena but also granted the Union's motion for a protective order, and imposed the following conditions: (1) only the Secretary and no more than five designated Department officials may review the minutes; (2) the Department may copy those portions of the minutes believed relevant only while in the presence of a Union official, and then must immediately return the minutes to the Union along with a list of the excerpts copied; (3) the Department may not distribute or grant access to the minute excerpts or information derived from them to anyone except pursuant to a court order; (4) the Department must notify the Union of any Freedom of Information Act requests for the minutes and give the Union an opportunity to oppose such requests; and (5) the Department must return to the Union any

copies of the minutes it would otherwise destroy.

The Secretary appealed to this court, challenging all but the fourth and fifth conditions. On appeal, we reversed. *See McLaughlin v. Service Employees Union, AFL–CIO, Local 280*, 880 F.2d 170 (9th Cir.1989) (*"SEU I"*). We held that Mr. Van Bourg's declaration contained "[b]are allegations of possible first amendment violations ... insufficient to justify judicial intervention into a pending investigation ... [rather than] 'objective and articulable facts....' " *SEU I*, 880 F.2d at 175 (quoting *Brock v. Local Union 375, Plumbers Int'l Union of America, AFL–CIO*, 860 F.2d 346, 350 n. 1 (9th Cir.1988) (*"Plumbers I"*)). Although we reversed the district court's grant of the protective order, we stated that our decision did not preclude the district court from receiving additional evidence to determine whether the Union could establish a *prima facie* case of first amendment infringement. *SEU I*, 880 F.2d at 176.

On remand, the Union submitted the following additional evidence: (1) the declaration of Union President Joseph Stellino; (2) two letters from Union members stating that they would cease attending meetings as a result of our decision in *SEU I* vacating the protective order; (3) the requested minutes (submitted under seal); (4) the deposition testimony of two San Francisco Office of Labor–Management Standards ("OLMS") administrators; and (5) another declaration of Union attorney Van Bourg. The Department submitted the declaration of its San Francisco OLMS area administrator C. Russell Rock, describing the Department's so-called "need-to-know" policy restricting the disclosure of subpoenaed documents to government officials "who have a need to know the information involved in order to take appropriate action." U.S. Department of Labor, Office of Labor–Management Standards of Enforcement, p. 10–1 (Mar. 3, 1981).

Based on the additional evidence the district court concluded that the Union had made out a *prima facie* first amendment case. The court then reissued the protective order it had previously granted, terming it "the least restrictive means of permitting the Petitioner to achieve her pinpointed objective with a minimum of interference with the First Amendment rights of the Union and its members."

The Secretary timely appealed, again challenging the first three restrictions only.

## DISCUSSION

### I

■ The members of the Union are pari-mutuel clerks who work in the California horse racing industry. Horse racing is regulated by the California Horse Racing Board, which licenses clerks, and retains the right to revoke their licenses. The Union contends that its members discuss highly political issues at their meetings, and that the knowledge that the records of their meetings could end up in the hands of the Racing Board or other regulators of the racing industry would chill their associational and expressive rights. Based upon our review of the minutes submitted under seal, we agree with the Union's characterization of them. The minutes record discussions of a highly sensitive and political character, and include statements which Union members may well have made only because they believed that their comments would not be repeated outside of the Union. Most of these statements have no apparent bearing on the Union's finances—the subject of the Secretary's investigation—but relate to broader issues surrounding the horse-racing industry. We must now decide whether, in light of the sensitivity of the requested materials, the Union has made out a *prima facie* case that the unrestricted taking of the minutes will infringe upon its and its members' first amendment rights. We consider this question *de novo*. *Dole v. Plumbers Local Union 375, Plumbers Int'l Union*, 921 F.2d 969, 972 (9th Cir.1990) (*"Plumbers II"*).

The showing necessary to make out a *prima facie* case for a protective order under the first amendment was set forth in *Plumbers I*. The Union must demonstrate that disclosure will result in: "(1) harass-

ment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." 860 F.2d at 350 (footnote omitted) (quoted in *SEU I*, 880 F.2d at 175). "The record must contain 'objective and articulable facts, which go beyond broad allegations or subjective fears.'" *SEU I*, 880 F.2d at 175 (quoting *Plumbers I*, 860 F.2d at 350 n. 1).

Following our decision in *SEU I*, Union President Stellino received two letters from members who stated that they would no longer attend meetings. One of these letters stated, "I am writing this letter to you, so you can let the Labor Department know that I will not attend or participate at all membership and executive board meetings do to my invasion of privacy and the unions." The other expressed the same sentiment. It stated, "I regret to inform you I will not attend any more union meetings. I feel that my opinions and thoughts belong to me and my union. If the minutes are made known I firmly believe that is an invasion of my privacy."

The Union argues that the two letters constitute objective evidence of "membership withdrawal," and therefore show that the Union has met its *prima facie* burden. Whether or not the Union's characterization is correct, the letters certainly satisfy alternative criterion (2) as set forth in *Plumbers I*. The letters clearly suggest "an impact on ... the members' associational rights." 860 F.2d at 350. The record now demonstrates that the knowledge that their comments would be subject to scrutiny by the government caused at least two Union members to conclude that they could no longer attend meetings. It goes without saying that, according to the record, those members no longer feel free to express their views on controversial issues at union meetings. This is precisely the sort of "chilling" of first amendment rights we referred to in *Plumbers I*. Thus, the evidence submitted by the Union serves to establish a *prima facie* case.

The Secretary argues that the letters do not establish a *prima facie* case because

they do not show an objectively reasonable fear of infringement on first amendment rights. According to the Secretary, the letters were only written as a response to false information that Union President Stellino conveyed to the membership. In his declaration, Stellino states that he "informed the membership of the decision of the Ninth Circuit in this case [*SEU I*] that the Union's minutes would be reviewed by the Department of Labor without any restriction on the Department's ability to disclose the minutes to other persons." The Secretary points out that the Department of Labor is subject to the restrictions contained in its own "need to know" policy, and that those restrictions make any fear on the part of union members objectively unreasonable.

■ We reject the Secretary's argument for several reasons. To the degree that the Secretary argues that the individual members' fears must be objectively reasonable, she misapprehends the law. In *SEU I* we stated that "[t]he record must contain 'objective and articulable facts, which go beyond broad allegations or subjective fears.'" 880 F.2d at 175 (quoting *Plumbers I*, 860 F.2d at 350 n. 1). However, there we were referring to the *union's* fears of a chilling effect, which we required to be based on objective evidence such as membership withdrawal. There is no requirement that an actual chill experienced by a union be objectively based. Our inquiry is directed to whether the governmental action "would have the *practical effect* 'of discouraging' the exercise of constitutionally protected political rights." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 461, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958) (quoting *American Communications Ass'n v. Douds*, 339 U.S. 382, 393, 70 S.Ct. 674, 681, 94 L.Ed. 925 (1950)) (emphasis added). This inquiry ends when the practical effect of the government's actions has been determined; a court need not go on to evaluate whether people who withdrew from membership, for example, were right to do so. The Secretary's argument that the union members' fears are not objectively reasonable is therefore unavailing.

Moreover, to the degree that the Secretary argues that the letters are insufficient because they are based on false information and a lack of awareness of the "need to know" policy, her argument fails factually. First, the letters, on their face, do not purport to be based on Stellino's description of our holding in *SEU I.* Second, neither letter suggests that it is the *unlimited* nature of the disclosure of the Union minutes that underlies the member's unwillingness to attend future meetings. Rather, both letters exhibit a concern for the consequences that would flow from *any* disclosure of the contents of the minutes to the government or any government official. Thus knowledge of a "need to know" policy would not have obviated the members' fears. Third, the minutes submitted under seal in the present case are extremely sensitive. They contain politically charged statements relating to the operations of state agencies responsible for regulating the racing industry. Those same agencies, under some circumstances, share information with the Department. Therefore, a belief that the Department will have access to the Union minutes might well cause some Union members to cease speaking freely at meetings, or to cease attending them at all. Finally, the Secretary's "need to know" policy does not have the force of law because it is not codified in a statute, nor is it promulgated as a regulation in the Federal Register.[1] As such, it is not subject to judicial enforcement. *See Rank v. Nimmo,* 677 F.2d 692, 698 (9th Cir.), *cert. denied,* 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982). Should the Secretary deviate from the need to know policy, neither the Union nor its members would have any recourse. Furthermore, the Secretary could revoke the need to

know policy without any advance warning. In short, the policy provides only so much protection to first amendment interests as the Secretary—in her discretion—chooses to grant at any particular moment.

For the foregoing reasons, we conclude that the Union established a *prima facie* case.

## II

We must next determine if the district court abused its discretion in issuing the order limiting the scope of the subpoena. *See SEU I,* 880 F.2d at 174 (when a *prima facie* case has been shown, the district court's decision to grant a protective order is reviewed for an abuse of discretion).

■ Once the Union established a *prima facie* case, the burden shifted to the Secretary to show (1) "that the information sought . . . is rationally related to a compelling governmental interest," and (2) that "the government's disclosure requirements are the 'least restrictive means' of obtaining the desired information." *Plumbers I,* 860 F.2d at 350 (citing *Buckley v. Valeo,* 424 U.S. 1, 64, 68, 96 S.Ct. 612, 656, 658, 46 L.Ed.2d 659 (1976) and *United States v. Trader's State Bank,* 695 F.2d 1132, 1133 (9th Cir.1983)). We are willing to tolerate some chilling effect if it is necessary to do so in order to protect a compelling governmental interest.[2]

Here, there is little doubt that the Department's purpose of investigating possible criminal violations of the LMRDA serves a compelling governmental interest. *See Branzburg v. Hayes,* 408 U.S. 665, 700, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972) (holding that grand jury's role in investigating crime serves a compelling governmental interest justifying the limitation on

---

1. In our earlier opinion in this case, we stated that the Secretary had promulgated the need to know policy in regulations. *SEU I,* 880 F.2d at 175. However, the Secretary concedes that the need to know policy was not promulgated in accordance with the procedures of the Administrative Procedure Act, and is, in that sense, not a formal regulation. Our statement in *SEU I* should be construed as referring to the *informal* policy which the Secretary has adopted.

2. It is possible that in some circumstances the government would not prevail even if it carried the above burden. There may be instances in which the government is required to show that the importance of its purpose outweighs the concern over its proposed intrusion on first amendment values. *See Buckley,* 424 U.S. at 68, 96 S.Ct. at 658. However, we need not consider that question here because the Union does not challenge the district court's order and our modifications to it are so slight.

first amendment rights that results when newspaper reporters are subpoenaed to testify before the grand jury). Nor can it be doubted that the Department's review of Union records is rationally related to the purpose of investigating possible misappropriation of funds. *See Marshall v. Stevens People & Friends for Freedom*, 669 F.2d 171, 179 (4th Cir.1981), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982) (noting that business records and minutes are routinely furnished to governmental authorities conducting criminal investigations) (citing *Patterson*, 357 U.S. 449, 78 S.Ct. 1163).

We turn next to the question whether the administrative subpoena will effectuate the Department's compelling interest with no greater restriction on the first amendment rights of the Union and its members than necessary. In the present context, we answer this question by looking at the particular limitations on the government's conduct imposed by the district court. We do so not only because we are reviewing the actions of that court, but more importantly, because if the Secretary can reasonably comply with those limitations, then her unrestricted seizure and use of the records is not necessary. In short, to the extent that the Secretary may accomplish her objectives and still comply with the court's limitations, those limitations constitute "less restrictive means" and we will uphold them.[3] If, on the other hand, a particular restriction in the protective order would unduly burden the Secretary's efforts to conduct an adequate investigation, that restriction would be inconsistent with the requirement that the Secretary be afforded the necessary means of obtaining the information she seeks and we would be required to strike it. *See Plumbers I*, 860 F.2d at 350.

The Secretary argues that the restriction of material to herself and five other individuals will make the investigation unnecessarily burdensome to conduct. In support of this position, she attaches the declaration of the Area Administrator for the San Francisco Office of OLMS, C. Russell Rock. Rock explains that a typical investigation requires the participation of approximately 15–20 decisionmakers, not to mention support staff. According to Rock, the court's restriction would "cripple" the Department's "ability to act under [its] statutory investigative authority." The Union does not contest this assertion. In light of the above, we conclude that the limitation to five designated individuals would not permit the Department to accomplish its admittedly compelling purpose in a reasonable manner. Accordingly, we hold that the district court abused its discretion in limiting disclosure to five named individuals. The Secretary must be allowed to show the relevant material to anyone within the Department who has a legitimate need to see it, and on remand the district court's order shall modify its order so as to permit her to do so.

However, our rationale for striking the five person limitation does not affect the portion of the order restricting the Department's ability to distribute the information to persons outside of the Department without court approval. The Union has made a prima facie showing that its members' first amendment rights will be chilled by disclosure of the minutes. The burden has thus shifted to the Secretary. *Id.* at 350. Yet, the Secretary has made no showing that any need exists to distribute information to other agencies or that the requirement of court approval will constitute an undue burden on her. The fact that one agency has a right to information does not automatically justify distribution to other government agencies.[4] The governing

---

3. We need not determine whether the limitations are sufficient to meet the *least* restrictive means standard, since by not appealing the decision below the Union has accepted the district court's determination that they are.

4. We note that the Secretary simply opposes the order as a whole. Although she cites the Department of Justice and the Internal Revenue

Service as examples of the kinds of governmental entities outside the Department with which she would like to share information, she does not argue that a special exception from the prior court approval requirement should be made for these agencies. Thus, we do not consider the appropriateness of any such exception. However, without indicating any view as to the

statute, 29 U.S.C. § 521(b), limits the Secretary to judicial enforcement of the Department's subpoenas so that "a district court may intervene to protect the constitutional rights of the target of an investigation." *SEU I*, 880 F.2d at 175. Because either acquisition or disclosure of information may chill union members' first amendment rights, judicial control over administrative subpoenas extends not only to restricting an agency's acquisition of information, but also to regulating the disclosure of that information from one governmental agency to another. *See, e.g., FTC v. Texaco, Inc.*, 555 F.2d 862, 884–85 (D.C.Cir.) (en banc), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977).[5] Thus, we conclude that in subjecting the Department's dissemination of the information contained in the minutes to other governmental entities to judicial scrutiny, the district court did not abuse its discretion.

■ With respect to the requirement that the Secretary designate the relevant portion of the minutes in the presence of a Union representative, Rock states that this could "hamper fact-finding by prematurely disclosing the investigative focus and shape." We find this contention unpersuasive because, under the circumstances of the instant case, observation by a union representative of the process of selecting relevant information will be uninformative. In determining relevancy, the Secretary is free to include all material relating to financial matters. All that could be learned from observing the identification and copying of relevant financial material is that the investigation is focusing on financial affairs. But, the Union and its members are already fully aware that the investigation relates to financial questions, and they would learn nothing further from observing the process.

■ Nor will the Department's investigation be hampered by an inability to take possession of all of the minutes and study them at length. The minutes are far from voluminous and the relevant material can be identified quickly and easily. In addition, only a small portion of the contents relates to financial matters. Because the implementation of this procedure will permit the Union and its members to know that the Secretary has not retained any portions of the minutes relating to matters of a sensitive political nature and because this procedure will not significantly hamper the Secretary's investigation, we conclude that the district court did not abuse its discretion.

■ The Department next argues that returning the original of the minutes could create an evidentiary problem in any future legal proceedings. However, in light of Fed.R.Evid. 1003 (duplicates admissible), we disagree that a copy made under court order would be inadmissible as evidence. Thus, the district court did not abuse its discretion in requiring the return of the originals.

### III

Based on the foregoing considerations, we conclude that the protective order issued by the district court was appropriate in all but one respect—the limitation of the right to review the minutes to the Secretary and five designated Department officials. That part of the order shall be modified on remand. In all other respects, the order is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR SUCH FURTHER PROCEEDINGS AS MAY BE CONSISTENT WITH THIS OPINION.

legality or desirability of granting one, we do not foreclose the Secretary from pursuing that question on remand.

**5.** *Texaco* involved judicial enforcement of administrative subpoenas under 15 U.S.C. § 49. That provision governs the subpoenas in this case as well. *See* 29 U.S.C. § 521(b).