**Linda D. MISEK–FALKOFF and Adin Falkoff, Plaintiffs,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

**No. 89 Civ. 6269 (VLB).**

United States District Court, S.D. New York.

Sept. 29, 1992.

Donald L. Sapir, White Plains, N.Y., for plaintiffs.

---

R. Scott Garley, Seward & Killel, New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

By Order dated January 6, 1992, I assigned supervision of discovery to United States Magistrate Judge Mark D. Fox. Plaintiffs have raised objections to two discovery rulings rendered by Magistrate Fox on May 28, 1992: a) upholding objections by defendant IBM to requests for production of a portion of minutes of an IBM meeting, and b) permitting internal dissemination of a report of a psychiatric examination of plaintiff Dr. Misek–Falkoff.

## I.

Plaintiffs argue that IBM may not assert the attorney-client privilege regarding a portion of the minutes of a February 19, 1986 meeting of an internal IBM panel concerning the IBM Medical Disability Income Plan ("MDIP"), plaintiff's deposition Exhibit 88, which the Magistrate Judge ruled could be withdrawn from production. Plaintiffs claim that there is no proven nexus between the appearance of an attorney's name in the minutes, and the minutes themselves, to substantiate that there was a confidential communication. Alternatively, plaintiffs argue that IBM has waived the privilege by producing the document.

Defense counsel produced this document along with others in response to plaintiff's discovery demand. Defendant asserted the attorney-client privilege one month later upon learning that one of the parties mentioned in the minutes was an attorney, Gus Borgeson, employed by IBM in the Armonk office. IBM asserts that Mr. Borgeson was occasionally consulted on MDIP matters when the IBM attorney assigned to the panel, P.J. Danilowitcz was unavailable. It is IBM's contention that since Mr. Danilowitcz was not in attendance at the February 19, 1986 meeting, Mr. Borgeson's name most likely appears in the minutes because he was consulted for legal advice regarding an IBM application for involuntary MDIP benefits for plaintiff Dr. Linda D. Misek–

Falkoff. Defendant further contends that production of the disputed segment of the document was inadvertent and that inadvertent production of a privileged communication does not constitute waiver of the privilege.

■ While panel members and Mr. Borgeson state, in affidavits, that the only communication Mr. Borgeson had with the panel was to provide legal advice, no IBM submission verifies that Mr. Borgeson's name appears in the minutes for the date involved as a result of any confidential communication regarding Dr. Misek–Falkoff or any other matter. Neither is it established that the text in question, "had no problems with case—'someone not unsat today—can you force her out of business.' Yes—MDIP," can be interpreted as legal advice. I find that the text does not, as defendant contends, indicate that legal, rather than business, advice was being given. No legal issues are mentioned.

■ Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, the privilege is narrowly construed, applying only where necessary to achieve its purpose. *Fisher v. United States*, 425 U.S. 391, 402, 96 S.Ct. 1569, 1576–77, 48 L.Ed.2d 39 (1976). The privilege applies only to confidential communications between attorney and client relating to legal advice. *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036–37 (2d Cir.1984). The fact that a person is an attorney does not make everything said between that person and a client privileged. *United States v. Loften*, 507 F.Supp. 108, 112 (S.D.N.Y.1981). I can find no basis on which to affirm the ruling that the extract of the minutes is, in fact, a privileged communication between an attorney and client. The ruling that the attorney-client privilege justifies withholding from plaintiff's deposition Exhibit 88 merely on the ground that an attorney's name was included in the minutes of a meeting, without substantiation of confidential communication, was clearly erroneous and is

reversed.[1]

## II

■ Plaintiffs also object to denial of their application to limit the scope of individuals who may be permitted to review the transcript with respect to Dr. Misek–Falkoff's psychiatric examination by Dr. Andrew E. Skodol, an expert retained by IBM. On May 7, 1991 Magistrate Judge Fox ruled that the transcript would be afforded confidential status in accordance with my March 25, 1992 Stipulation and Order of Confidentiality with Respect to Certain Medical Records. Plaintiffs requested that physicians and nurses employed or retained by the IBM medical department be excluded from the review, emphasizing the highly sensitive and personal nature of the examination and expressing a desire to protect their privacy against unnecessary intrusion. The Magistrate Judge denied the request with the understanding that the transcript would be given only to those medical personnel whom the defendant would call as witnesses at trial.

In its Memorandum in Opposition to Plaintiffs' Objections to Magistrate Judge Fox's Discovery Rulings, IBM contends that it has a right to use the transcript of its *own* inquiry and to "show and discuss with its medical witnesses—whether fact witnesses or expert witnesses—anything counsel believes will assist in defending IBM's interests." IBM further maintains that plaintiffs' concern to protect Dr. Misek–Falkoff's privacy within the work environment and her community is not a sufficiently compelling reason for limiting IBM's use of a sensitive and probing transcript.

Paragraph 5 of the March 25, 1992 Stipulation and Order with Respect to Certain Medical Records affords an opportunity for any party to request a further restriction in the transcript's scope of review:

"In the event that any party wishes to obtain exemption for any Confidential Matter from any of the terms of this Stipulation and Order, and the parties are unable to agree on the exemption, either party may apply to the Court for appropriate relief."

Communications between a patient and a psychologist, psychiatrist or psychotherapist are usually much more intensely personal than those with physicians and other doctors. Disclosure of such communications and diagnoses could be considered embarrassing and an intrusion into one's privacy, and could cause harm to one's status in the workplace. In determining whether to permit the release of sensitive documents for particular uses in litigation, *In re John Doe (U.S. v. Diamond)*, 964 F.2d 1325 (2d Cir.1992), recognizes a court's need to balance an individual's privacy rights against the litigation needs of opposing counsel.

The medical transcript includes the type of intensely personal communications that the psychotherapist-patient privilege is designed to protect from intrusion by third parties. While some aspects of plaintiff's emotional health may be quite relevant to the issue of employment by IBM, and hence should be allowed to be used to the extent necessary to assure a just presentation at trial, the transcript with respect to the psychiatric examination includes personal information that may be harmful and, in some instances, irrelevant regarding fitness for continued employment.

IBM's expert, Dr. Skodol, was retained to conduct a psychiatric examination and to render an opinion to IBM for purposes of this litigation based on that examination and, perhaps, on a review of other appropriate relevant medical materials which IBM possesses. Dr. Skodol can testify at trial based on the examination to the extent

---

1. Should the attorney-client privilege otherwise be successfully invoked, the text involved indicates that the question of future wrong would have to be considered. The privilege does not apply when a client seeks legal advice or services in furtherance of future wrongdoing. The Supreme Court has indicated that the attorney-client privilege must "... cease to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing,* but to *future wrongdoing.*" *United States v. Zolin,* 491 U.S. 554, 562–63, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1988) (emphasis in original).

necessary. While release of the transcript to other IBM personnel does not necessarily mean the information will not remain confidential, there is a high risk that it may not. Disclosure to other persons is not reasonably necessary for accomplishing the purpose for which Dr. Skodol was consulted. *Cf. Simpson v. Braider,* 104 F.R.D. 512, 519–521 (1985) (possibility of injury caused by disclosure of psychiatric information far outweighs the resulting benefit to justice in an individual tort suit).

There is no compelling reason why physicians and nurses of the IBM internal medical department need view the transcript. The risk of invasion of privacy and resultant injury to the plaintiff outweighs any benefit IBM claims would be obtained by releasing the information to staff of the Medical Department.

By limiting the scope of review of the transcript, the court is not placing an undue burden on IBM in accomplishing its objectives. *Cf. Dole v. Service Employees Union,* 950 F.2d 1456, 1462 (9th Cir.1991) (to the extent that a party may accomplish its objectives and still comply with the court's discovery limitations, those limitations constitute "less restrictive means").

Dr. Misek–Falkoff appears to have been cooperative by not limiting the scope of the examination and by openly answering all questions during the examination, even those which one might find to be questionable and probing of certain personal matters which are not the subject of this action. Dr. Skodol, as IBM's psychiatric expert, should be the only party to review the transcript.

While the Magistrate Judge has been diligent in restricting review of the transcript in other respects and has relied on IBM's assertion that only those who would appear as medical witnesses for IBM would be given access, the ruling that the March 25, 1992 Stipulation and Order with Respect to Certain Medical Records was sufficient, without further restriction, to protect Dr. Misek–Falkoff's privacy was clearly er-

roneous, and is modified to limit pre-trial dissemination to Dr. Skodol.

SO ORDERED.