87 F.3d 1321
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Applicant-Appellee,
v.
RALEY'S DRUG CENTER, INC., Respondent-Appellant,
United Wholesalers and Retailers Union, Intervenor-Appellant.
 No. 95-15192.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 12, 1996.
Decided June 6, 1996.
 
 Before: SNEED, NORRIS, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Raley's, a supermarket chain, and United Wholesalers and Retailers Union ("UWRU") (collectively "Appellants") appeal from an order enforcing an investigative subpoena issued by the National Labor Relations Board ("NLRB") requiring Raley's to produce employee petitions submitted by UWRU to Raley's in support of UWRU's demand for recognition. Appellants claim that disclosure of the employee petitions violates UWRU members' first amendment associational rights. We have jurisdiction under 28 U.S.C. § 1291 and we AFFIRM.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 In September 1993, after the Independent Drug Clerks Association ("IDCA") ceased to represent the Raley's drug clerks, Edward Wright, a drug center employee, formed the UWRU. In order to obtain recognition as the representative of the drug center employees, Wright began to circulate petitions soliciting employee support for the newly formed union. UWRU submitted the petitions to Raley's and demanded that Raley's recognize it as the exclusive collective bargaining representative of the drug clerks. Raley's did so, allegedly because the petitions were signed by a majority of drug center employees, and subsequently UWRU and Raley's entered into a collective bargaining agreement.
 
 
 4
 On October 4, 1993, the United Food and Commercial Workers Union Local 588 ("Local 588") filed an unfair labor practice charge with the NLRB, alleging that Raley's had unlawfully assisted and dominated UWRU, and had unlawfully recognized UWRU even though (1) UWRU did not have majority status, (2) unfair labor practice complaints concerning Wright's group were pending and (3) Local 588 had previously demanded recognition and offered to prove its majority support.
 
 
 5
 In pursuing its investigation of Local 588's complaint, on June 17, 1994, the NLRB issued an investigative subpoena to Raley's requiring the production of the UWRU employee petitions as well as payroll lists for Raley's drug center employees as of September 23, 1993, so that the NLRB could determine whether a majority of the drug center employees had signed the petitions. After the NLRB rejected Raley's offers to produce the subpoenaed documents under specified conditions, the NLRB filed an application to enforce the subpoena in the district court.
 
 
 6
 The district court initially referred the application for enforcement to a magistrate judge. After UWRU's motion to intervene was granted, Raley's and UWRU filed oppositions to the NLRB's enforcement application. In an order dated November 30, 1994, the magistrate judge concluded that UWRU had failed to establish a prima facie case of first amendment infringement. First, the magistrate concluded that the petitions were not the equivalent of "membership lists." Second, the magistrate found no "objective and articulable facts" which established that disclosure of the subpoenaed documents to the NLRB would result in a chilling of members' associational rights.[1] The possibility that the NLRB might divulge information to Local 588 that might lead to an unfair advantage in a future election battle was "too tenuous to require that this court restrict the NLRB's ability to conduct its lawful investigation."
 
 
 7
 Thus, the magistrate ordered Raley's to comply with the subpoena under the following conditions: (1) the NLRB may not grant access to the petitions to non-NLRB personnel unless it is necessary to introduce the petitions as evidence in a proceeding before the NLRB or a court; (2) the NLRB may not inform non-NLRB personnel of the names of the petition signers; (3) the NLRB may not inform non-NLRB personnel of the number or approximate number of petition signers at any particular Raley's store; and (4) the NLRB must return the petitions to Raley's upon conclusion of the case.
 
 
 8
 Raley's and UWRU filed joint objections to the magistrate's recommendation, seeking, in relevant part, that the NLRB not reveal to Local 588 the total number of petition signers or the specific stores at which petitions were gathered. Appellants argued that if given this information, Local 588 could identify which of Raley's employees signed the petitions. The NLRB, however, opposed extending the protective order such that an action taken during its investigation (e.g., asking Local 588 for evidence of unfair practices at certain stores) could be considered an implicit disclosure of the specific stores at which petitions were gathered and thus a violation of the protective order.
 
 
 9
 The district court decided that further prohibition against implicitly revealing the total number of petition signers or the stores at which petitions were signed was unwarranted. It noted that Local 588 was only in a position to infer who had signed the petitions because Raley's and UWRU had already revealed significant information regarding the petitions in Wright's declaration.[2]
 
 
 10
 Raley's and UWRU appeal from this decision, claiming that the failure of the district court to prohibit the NLRB from explicitly or implicitly revealing to Local 588 the total number of petition signers or the specific stores at which petitions were signed violates UWRU members' associational rights.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 11
 The panel reviews de novo whether the evidence presented by Appellants constitutes a prima facie case of first amendment infringement. Dole v. Local Union 375, Plumbers Int'l Union of America, AFL-CIO, 921 F.2d 969, 972 (9th Cir.1990), cert. denied, 502 U.S. 868, 112 S.Ct. 197 (1991).[3]
 
 
 12
 II. DOES THE PRODUCTION OF UWRU'S EMPLOYEE PETITIONS TO THE NLRB VIOLATE THE UWRU MEMBERS' ASSOCIATIONAL RIGHTS?
 
 
 13
 Appellants contend that the petitions, as statements of affiliation and/or the equivalent of membership lists, are protected by the first amendment; thus, they argue, production of the petitions--absent additional protection against the NLRB disclosing the total number of petition signers or the specific stores at which petitions were signed to Local 588--infringes upon UWRU members' associational rights.
 
 A. Standing
 
 14
 As a threshold issue, we note that Raley's does not have standing to assert UWRU's members associational rights. "Prudential limitations on standing 'require that parties assert their own rights rather than rely on the rights or interests of third parties.' " Viceroy Gold Corp. v. Aubry, 75 F.3d 482, 488 (9th Cir.1996) (quoting Hong Kong Supermarket v. Kizer, 830 F.2d 1078, 1081 (9th Cir.1987)); see also N.A.A.C.P. v. Alabama, 357 U.S. 449, 459 (1958) (Parties must "rely only on constitutional rights which are personal to themselves.") (citation omitted).[4]
 
 
 15
 "This principle is not disrespected where constitutional rights of persons who are not immediately before the Court could not be effectively vindicated except through an appropriate representative before the Court." N.A.A.C.P. v. Alabama, 357 U.S. at 459 (citation omitted). We consider two factors in determining whether to permit a party to bring suit on behalf of another: "(1) the relationship of the litigant to the person whose right he seeks to assert; and (2) the ability of the third party to assert his own right." Viceroy Gold, 75 F.3d at 488 (citing Singleton v. Wulff, 428 U.S. 106, 114-15 (1976)).
 
 
 16
 Here, prudential considerations weigh heavily against permitting Raley's to assert the associational rights of its union member employees. First, it does not appear that the associational rights Raley's asserts on behalf of its petition-signing employees is "inextricably bound up" with any activity that Raley's itself wishes to pursue. See Voigt, 70 F.3d at 1564 (one underlying rationale for permitting third party standing where a close relationship exists is that the rights of the third party are "inextricably bound up" with the activity the plaintiff wishes to pursue); see also Viceroy Gold, 75 F.3d at 488-89 (Viceroy's desire to schedule longer workdays and remain non-union is inextricably bound up with employees' right to work the same hours regardless of whether they engage in union activity). Second, we do not believe that the relationship between Raley's and its petition-signing employees is " 'such that the former is fully, or very nearly, as effective a proponent of the right as the latter.' " Voigt, 70 F.3d at 1564-65 (quoting Singleton v. Wulff, 428 U.S. at 115).
 
 
 17
 Regardless, however, of Raley's relationship with its petition-signing employees, we find Raley's lacks standing to assert the associational rights of the petition-signing employees where the employees are able to assert their associational rights through UWRU. See Viceroy Gold, 75 F.3d at 489 (where there is no genuine obstacle to employees' assertion of their own rights, employer lacks standing); Matter of Grand Jury Subpoena, 62 F.3d at 1146 (rejecting standing where there is no hindrance to third party's ability to protect his own interests). Here, UWRU has standing to assert its members' associational rights. See N.A.A.C.P. v. Alabama, 357 U.S. at 459 (NAACP entitled to assert associational rights of its members); Brock v. Local 375, Plumbers Int'l Union of America, 860 F.2d 346, 349 (9th Cir.1988) (if Voluntary Fund is separate organization from the Union, then it may assert a violation of its members' associational rights; if Fund is merely part of the Union, then the Union can attempt to show violation of members' association rights). Thus, we hold that UWRU, not Raley's, is the appropriate party to assert the union members' associational rights.
 
 B. The Merits
 
 18
 In order to establish a prima facie case of first amendment infringement, UWRU must
 
 
 19
 demonstrate that enforcement of the subpoenas will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of the members' associational rights.
 
 
 20
 Dole v. Local Union 375, 921 F.2d at 972 (quoting Brock v. Local 375, Plumbers Int'l Union of America, 860 F.2d 346, 350 (9th Cir.1988)); accord Dole v. Service Employees Union, AFL-CIO, Local 280, 950 F.2d 1456, 1459-60 (9th Cir.1991).
 
 
 21
 The prima facie case has "two tiers": first, UWRU "must demonstrate a causal link between the disclosure and the prospective harm to associational rights;" second, UWRU "must demonstrate that [UWRU] is the type of association where exposure could incite threats, harassment, acts of retribution, or other adverse consequences from affiliating with it." Dole v. Local Union 375, 921 F.2d at 972. Moreover, " '[t]he record must contain "objective and articulable facts, which go beyond broad allegations or subjective fears." ' " Dole v. Service Employees Union, 950 F.2d at 1460 (quoting McLaughlin v. Service Employees Union, AFL-CIO, Local 280, 880 F.2d 170, 175 (9th Cir.1989)).
 
 
 22
 UWRU contends that it has established that the signatures on the petitions are the equivalent of membership lists or, at least, are statements of affiliation. See Buckley v. Valeo, 424 U.S. 1, 22 (1976) ("[m]aking a contribution, like joining a political party, serves to affiliate a person with a candidate."); N.A.A.C.P. v. Alabama, 357 U.S. at 462 (compelled disclosure of membership list violated NAACP members' associational rights where NAACP made uncontroverted showing that on past occasions revelation of the identity of members resulted in economic reprisal, loss of employment, physical threats and public hostility); United States v. Comley, 890 F.2d 539, 543-44 (1st Cir.1989) ("the Supreme Court has held that compelling a private organization to reveal the identities of its members where such disclosure will result in the harassment of existing members and the discouragement of new members can constitute a violation of the right to freedom of association.")
 
 
 23
 To begin, although production of the petitions can be viewed as the equivalent of compelling the disclosure of the identities of UWRU's members, the protective order prohibits the NLRB from disclosing the names of the petition signers.[5] Moreover, UWRU does not claim any harm to its members' associational rights due to disclosure of its members' identities to the NLRB. Compare Dole v. Local Union 375, 921 F.2d at 974 ("[T]he Fund needed to establish that its members legitimately feared retribution by those few governmental employees who would have access to its records.") with Dole v. Service Employees' Union, 950 F.2d at 1460 (prima facie case of harm to associational rights was established by the fact that two members ceased to attend Union meetings due to knowledge that comments recorded in Union minutes would be subject to government scrutiny).
 
 
 24
 Rather, UWRU objects to the failure of the district court to prohibit the NLRB from disclosing the stores at which petitions were signed or the total number of petition signers, arguing that such disclosures would implicitly disclose the identities of the UWRU members by allowing Local 588 to determine which employees signed the petitions. UWRU further claims that such indirect disclosure of the UWRU's members' identities will result in harassment, membership withdrawal, discouragement of new members or other chilling of the members' associational rights. UWRU, however, fails to provide evidence to support such a claim.
 
 
 25
 First, any harm resulting from the indirect disclosure of information due to the NLRB's investigation (such as which stores the NLRB investigation is focused upon) is not the equivalent of harm resulting from direct disclosure of the UWRU members' identities. See Dole v. Local Union 375, 921 F.2d at 972 ("the affidavit provides the court no assistance in allocating responsibility for that chill between the general investigation (the propriety of which the parties do not contest here) and the particular threat of disclosure of contributors' names through the subpoena.").
 
 
 26
 In addition, the causal link between the disclosure of the number of petition signers or the stores at which petitions were signed and the harm to UWRU's associational rights is very tenuous. As the district court noted, Raley's and UWRU themselves disclosed the background facts (together with the fact that a majority of the drug center employees allegedly signed the petitions) that would permit Local 588 to deduce which stores and which personnel may have signed the petitions. The total number of signers or the stores at which petitions were signed would provide very minimal assistance to Local 588's alleged efforts to deduce the identities of the petition signers.
 
 
 27
 Further, UWRU fails to show that the harm it fears to the members' associational rights arises from anything other than Local 588's independent actions--not from the potential indirect disclosure of the members' identities which could result from the NLRB investigation. UWRU relies upon the declaration of Wright, the organizer and president of UWRU, in which he states that he is extremely concerned that the production of the subpoenas to the NLRB will seriously harm UWRU and its members because he believes that Local 588 is "out to destroy the UWRU."
 
 
 28
 Wright's belief is based upon the following facts. On November 8, 1993, Local 588's attorneys, "purporting to represent the IDCA" filed a defamation action against Wright and other organizers of UWRU; subsequently, the action was voluntarily dismissed. Several months later, Local 588's attorneys threatened to file a similar action against UWRU due to statements made in an effort to gain support among the grocery employees at Raley's.
 
 
 29
 In addition, Local 588 and UWRU on several occasions have solicited the same employees for support.[6] Wright also claims that on at least two occasions Local 588's attorneys have counseled drug clerks who were dissatisfied with the resolution of their grievances to file unfair labor practice charges against UWRU. Both charges were ultimately dismissed. Wright also states that he believes a large number of drug center employees have chosen to become only financial core members of UWRU, rather than full members, at the instigation of Local 588.[7]
 
 
 30
 None of these facts supports a claim that indirect disclosure of members' identities will harm UWRU members' associational rights. To the contrary, Wright's declaration indicates that UWRU fears competition from Local 588 that is occurring regardless of the NLRB investigation.
 
 
 31
 Finally, Wright also states that UWRU members have expressed several concerns to him: (1) that Local 588 will eventually become their union representative given the unfair labor practice charge; (2) that if this occurs, Local 588 will retaliate against them for having supported UWRU; and (3) that the members are afraid that Local 588 will retaliate against them if it learns their identities. Wright also claims that drug clerks have told him they would not join UWRU out of fear of retaliation by Local 588's supporters.
 
 
 32
 Again, even these facts do not link the harm feared--retaliation by Local 588--to the indirect disclosure that could result from the NLRB pursuing leads based upon information gleaned from the petitions. It appears that UWRU members are afraid of Local 588's retaliation because it may ultimately become their union representative and because Local 588 members may learn their identities through various means--not through the NLRB's investigation.
 
 
 33
 In sum, Wright's declaration demonstrates at most that UWRU members fear retaliation from Local 588 that is wholly unconnected to disclosure of the petitions to the NLRB. Interpreted liberally, Wright's declaration also establishes that some drug clerks may have declined to join UWRU due to a fear that Local 588 would retaliate against them if it learned their identities. However, given that the NLRB cannot disclose the identities of the petition signers, nor can it disclose the number of petition signers at any given store, UWRU has failed to link any harm to the members' associational rights to anything other than Local 588's independent actions or the NLRB investigation as a whole. For these reasons, we reject UWRU's claim that the district court's order requiring disclosure of the petitions to the NLRB infringes upon its members' first amendment rights.
 
 CONCLUSION
 
 34
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The magistrate noted that UWRU did not object to the production of the documents to the NLRB, but only to the disclosure of information to Local 588
 
 
 [2]
 Appellants had stated that petitions were obtained in 38 stores out of 52, that approximately 318-338 employees signed the petition, that there are approximately 333 current members of UWRU, and that at 29 of the 38 stores most of the employees in the drug centers signed the petition
 
 
 [3]
 The NLRB's discussion of the abuse of discretion standard of review and the deferential standard the district court must utilize when determining whether to enforce an agency subpoena is misplaced. Appellants do not challenge the NLRB's authority to issue the subpoena nor do they challenge the relevance of the subpoenaed documents to the NLRB's investigation
 
 
 [4]
 We note that parties also must comply with constitutional standing requirements by demonstrating " '(1) a threatened or actual distinct and palpable injury to the plaintiff[;] (2) a fairly traceable causal connection between the alleged injury and the defendant's challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury.' " Viceroy Gold, 75 F.3d at 488 (quoting Hong Kong Supermarket, 830 F.2d at 1081); see also Matter of Grand Jury Subpoena Issued to Chesnoff, 62 F.3d 1144, 1145 9th Cir.1995) (in order to assert rights of third party, litigant must first have suffered some injury-in-fact adequate to satisfy Article III's case-or-controversy requirement). The Article III case-or-controversy requirements for standing are at times subsumed within the third party standing analysis. Voigt v. Savell, 70 F.3d 1552, 1564 (9th Cir.1995) (plaintiff can assert third party's rights where the plaintiff has a concrete interest in the outcome of the dispute; the plaintiff has a close relationship with the party whose rights it is asserting; and there is some hindrance to the third party's ability to protect his or her own interests) (citing Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz., 24 F.3d 56, 62 (9th Cir.1994), cert. denied, 64 U.S.L.W. 3778 (May 20, 1996) (No. 95-1529)
 
 
 [5]
 The protective order prohibits the NLRB from (1) granting access to the petitions to non-NLRB personnel unless it is necessary to introduce the petitions as evidence in a proceeding before the NLRB or a court; (2) informing non-NLRB personnel of the names of the petition signers; and (3) informing non-NLRB personnel of the number or approximate number of petition signers at any particular Raley's store
 
 
 [6]
 Wright claims that both UWRU and Local 588 solicited authorization cards from grocery clerks in Raley's Chico and Grass Valley stores. UWRU also attempted to organize the employees in a Tom Thumb grocery store in Sacramento, which at the time was being picketed by UWRU
 
 
 [7]
 Wright states that he also anticipates that UWRU and Local 588 will compete for support of the grocery clerks when Local 588's collective bargaining agreement with Raley's expires in March, 1995 and for support of the drug center employees when UWRU's contract expires in 1996