**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN DOE #1, an individual; JOHN
DOE #2, an individual; PROTECT
MARRIAGE WASHINGTON,
            *Plaintiffs-Appellants,*

v.

SAM REED, in his official capacity
as Secretary of State of
Washington; BRENDA GALARZA, in
her official capacity as Public
records Officer for the Secretary
of State of Washington,
            *Defendants-Appellees,*

WASHINGTON COALITION FOR OPEN
GOVERNMENT; WASHINGTON
FAMILIES STANDING TOGETHER,
  *Intervenors-Defendants-Appellees.*

No. 11-35854

DC No.
3:09-cv-05456-BHS

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted
June 22, 2012—Pasadena, California

Filed October 23, 2012

Before: Harry Pregerson, A. Wallace Tashima, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Tashima;
Concurrence by Judge N.R. Smith

12881

## COUNSEL

James Bopp, Jr., Terre Haute, Indiana, for the plaintiffs-appellants.

Anne E. Egeler, Deputy Solicitor General, Olympia, Washington, for the defendants-appellees.

Leslie R. Weatherhead, Witherspoon Kelley, Spokane, Washington, for intervenor-defendant-appellee Washington Coalition for Open Government.

Kevin J. Hamilton, Perkins Coie, Seattle, Washington, for intervenor-defendant-appellee Washington Families Standing Together.

Paul S. Ryan, Washington, DC, for *amicus curiae* The Campaign Legal Center.

---

## OPINION

TASHIMA, Circuit Judge:

Plaintiffs Protect Marriage Washington ("PMW"), John Doe #1, and John Doe #2 (collectively, "Plaintiffs") seek to enjoin Defendants, the Secretary of State and Public Records Officer of the State of Washington, from releasing the names of people who signed petitions supporting a Washington referendum. These petitions are already widely available on the internet. We dismiss this case as moot because we cannot grant Plaintiffs effective relief.

I

Washington citizens can use the referendum process to reject bills passed by the Washington legislature. Wash. Const. art. II, § 1(b). The referendum process is initiated when petitions with enough valid signatures of registered voters, together with their printed names and addresses, are filed with the Secretary of State. Wash. Rev. Code § 29A.72.130. Washington's Public Records Act ("PRA") requires state agencies to make public records available for public inspection. *Id.* § 42.56.070.[1]

---

[1]A more detailed factual background can be found in our previous opinion, *Doe v. Reed*, 586 F.3d 671 (9th Cir. 2009), and in the Supreme Court's opinion, *Doe v. Reed*, 130 S. Ct. 2811 (2010).

Washington Senate Bill 5688 expanded the rights and responsibilities of state-registered domestic partners. On July 25, 2009, PMW submitted signed petitions to the Secretary of State in support of a referendum to overturn Senate Bill 5688. Three days later, Plaintiffs filed a two-count complaint which sought to enjoin the State from publicly releasing the petitions. The district court granted a temporary restraining order the next day.

Count I of the Plaintiffs' complaint alleges that the PRA violates the First Amendment as applied to referendum petitions because it is not narrowly tailored to serve a compelling government interest. The district court initially agreed. *Doe v. Reed*, 661 F. Supp. 2d 1194 (W.D. Wash. 2009). We reversed, *Doe v. Reed*, 586 F.3d 671 (9th Cir. 2009), and granted Plaintiffs' motion for a stay pending final resolution of the appeals. The Supreme Court affirmed our decision, *Doe v. Reed*, 130 S. Ct. 2811 (2010), and also rejected a motion to vacate the stay, (US Dkt. Oct. 20, 2009).

On remand, the district court considered Count II, which claims that releasing the names of the signers of this petition would violate the First Amendment because the signers would be subjected to threats, harassment, and reprisals. On October 17, 2011, the district court granted Defendant's motion for summary judgment and dissolved the preliminary injunction. The State immediately began to release the petitions.

Also on October 17, Plaintiffs filed a notice of appeal and a motion for an injunction pending appeal in the district court. Before the district court ruled on that motion, Plaintiffs filed an emergency motion for an injunction pending appeal in this Court on October 20, 2011. We denied the motion without prejudice, but enjoined the State from releasing the petitions until five days after the district court's ruling. On November 8, 2011, the district court denied Plaintiffs' motion because it found that Plaintiffs failed to show a likelihood of success on the merits. The next day, Plaintiffs renewed their motion

before this panel, and a week later we denied the renewed motion. Plaintiffs requested an injunction pending appeal from Circuit Justice Kennedy, who referred the matter to the full Court, which in turn denied it.

The petitions are now available in original and in searchable form on the internet.

## II

This Court reviews a district court's grant of summary judgment de novo. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007). We review mootness de novo. *S. Cal. Painters & Allied Trades v. Rodin & Co., Inc.*, 558 F.3d 1028, 1034 n.6 (9th Cir. 2009).

## III

Standing is a "jurisdictional issue[ ] deriving from the requirement of a case or controversy under Article III." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (internal quotation marks omitted). This case is moot because no effective relief remains available to Plaintiffs. No exception to the mootness doctrine applies because this is not the type of case that is capable of repetition, yet evading review.

## A

**[1]** Count II seeks an injunction preventing defendants from making these petitions available to the public. This relief is no longer available because the petitions are now available to the public.

**[2]** "In deciding a mootness issue, the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be *any* effective relief." *Or. Natural Res. Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006) (internal quotation marks and alterations omitted); *see also Feldman*, 518 F.3d at 642. PMW argues that we could grant "effective relief" by preventing the State from fulfilling additional public records requests for the petitions and preventing Intervenors Washington Coalition for Open Government and Washington Families Standing Together from distributing the petitions. But the petitions are already available on websites that are not under the control of the State or Intervenors. If anyone with an internet connection can easily obtain the images of the original documents online, it is not clear why anyone would bother filing an additional public records request. And if someone did file such a request, the State would realistically not be contributing to the "further disclosure" of the petitions by responding to the request. A moot case cannot be revived by alleged future harm that is "so remote and speculative that there is no tangible prejudice to the *existing interests* of the parties." *Feldman*, 518 F.3d at 643 (internal quotation marks omitted) (holding a claim seeking the humane removal of feral pigs from an island became moot once monitoring indicated that all pigs had been killed).

**[3]** Similarly, in the FOIA context, we have held in an appeal challenging the district court's order unsealing FOIA documents, that the appeal would become moot once the documents were unsealed, because "the unsealing cannot be reversed." *Islamic Shura Council of S. Cal. v. FBI*, 635 F.3d 1160, 1164 (9th Cir. 2011).

**[4]** The Eleventh Circuit has also held that a case seeking to keep a document secret is moot once third parties have control over copies of the document. *See C & C Prods., Inc. v. Messick,* 700 F.2d 635, 636-37 (11th Cir. 1983) (dismissing appeal as moot because plaintiff 's "sole assignment of error

is that the district court erred in modifying the protective order to permit [a third party] to utilize the discovery materials," but the materials had been released to the third party and "no order from this court can undo that situation"). This is in contrast to situations in which a court can grant some effective relief with an order directed at the parties appearing before it. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992) (the court could "effectuate a partial remedy" in a case seeking to prevent IRS from obtaining certain evidence after IRS obtained the evidence by "ordering the Government to destroy or return any and all copies it may have in its possession"); *In re Grand Jury Investigation No. 78-184*, 642 F.2d 1184, 1188 (9th Cir. 1981), *aff'd sub nom. United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 422 n.6 (1983) (rejecting mootness argument because not all attorneys, paralegals, and staff had seen the released material and therefore "we can grant partial relief by preventing further disclosure"); *see also United States v. Nix*, 21 F.3d 347, 350 (9th Cir. 1994) (release of grand jury documents to litigants who had settled case was not moot because some class members had opted out and "there still exists the potential for further litigation and further disclosure").

Plaintiffs cite two cases in which, they argue, a court found a live controversy after documents had been disclosed to parties who were not before the court. We decline to follow *Detroit International Bridge Company v. Federal Highway Administration*, which held that a case seeking to prevent the release of a report to a congressman was not moot even after the defendant released the report to the congressman. 666 F. Supp. 2d 740, 742-45 (E.D. Mich. 2009). The court in *Detroit International* admitted that it was "skeptical" and acknowledged that it was "doubtful of its ability to offer an effective or meaningful remedy." *Id.* at 744-45. We cannot agree that, under such circumstances, the case had not become moot.

**[5]** In *United States v. Smith*, after the government publicly released a sentencing memorandum that contained allegations

of criminal conduct against uncharged individuals, the district court sealed the sentencing memorandum and denied a motion by various newspapers for access to the sentencing memorandum and the sealed briefs. 123 F.3d 140, 143, 145 (3d Cir. 1997). Consistent with our disposition of this case, the Third Circuit held that a motion by newspapers to access the released sentencing memorandum was moot because the newspapers "already possess[ed] it," and rejected the newspapers' claim to access the briefs because such access would "disclose additional confidential material." *Id.* at 146, 154. The court added, however, that "[e]ven if the dissemination by members of the public continues," an order barring further disclosure of the material in the sentencing memorandum "will at least narrow that dissemination." *Id.* at 155. This statement is dictum and does not undermine our common-sense conclusion that once a fact is widely available to the public, a court cannot grant any "effective relief" to a person seeking to keep that fact a secret. We doubt, because of the information's availability on the internet, that enjoining further disclosure by the parties will "narrow [any further] dissemination."[2]

## B

**[6]** An exception to the mootness doctrine is created when the circumstances in question meet the following two-prong test: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). The exception does not apply in this case because it fails prong one.

---

[2]The concurrence relies on these same cases, *see* Concurrence at 12892-97, to support its assertion that some effective relief may still be available to Plaintiffs. But none of these cases involved the posting of the information sought to be kept confidential on the internet by third-parties.

**[7]** Cases that qualify under prong one present controversies of inherently limited duration. In one of these cases, it is not "reasonably foreseeable" that plaintiffs can obtain full review before their case becomes moot. *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 774 (1978). For example, "[p]regnancy provides a classic justification for a conclusion of nonmootness. It truly could be capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973) (quotation marks omitted). Cases challenging a prior restraint on free speech also typically fit into this exception. *See, e.g.*, *Caroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 178-79 (1968) (holding that a First Amendment challenge to an expired restraining order which had enjoined a rally was not moot). Cases that only present live controversies in brief periods before an election present another example. *See, e.g.*, *Wisc. Right to Life, Inc.*, 551 U.S. at 462 (defendant "had no way of knowing well in advance that it would want to run ads on judicial filibusters" shortly before the election when such ads were prohibited under challenged law); *Bellotti*, 435 U.S. at 774 ("In each of the legislature's four attempts to obtain constitutional authorization to enact a graduated income tax, . . . the period of time between legislative authorization of the proposal and its submission to the voters was approximately 18 months.").

**[8]** There was no inherent limit on the duration of this controversy. The district court granted a temporary restraining order the day after Plaintiffs filed their complaint in July 2009. The petitions were not released until October 2011. The release was not timed to a 27-month deadline inherent in this type of petition. And unlike the election-related cases granting an exception like *Wisconsin Right to Life* and *Bellotti*, the issues in this case were not moot once the election was held. *See also Feldman*, 518 F.3d at 644 (noting that plaintiffs "had an opportunity to request both a temporary restraining order and a preliminary injunction, which were denied and affirmed on appeal"). Because it is reasonably foreseeable that this type

of challenge could be fully litigated before becoming moot, this type of challenge does not evade review.

## IV

**[9]** Because this case is moot, we lack jurisdiction to consider its merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Accordingly, we **DISMISS** this appeal.

---

N.R. SMITH, Circuit Judge, concurring in the judgment:

I concur in the judgment affirming the district court, because Plaintiffs have not raised a successful as-applied challenge. However, because Supreme Court precedent makes clear that this case is not moot where continued government disclosure of confidential materials can be prevented, I write separately to address the merits.

## I.   Mootness

As the majority noted, the district court granted Defendant's motion for summary judgment and dissolved the preliminary injunction in October 2011. The State immediately began to release the R-71 petitions. Plaintiffs may have prevented the release of petitions from occurring by asking the district court to stay its order pending appeal and filing a motion for stay here. As a result of Plaintiffs' tactical decisions, the records became public before Plaintiffs took any steps to prevent disclosure.

Because the names of R-71 petition signers have been released to the public at large, the question of mootness now hinges entirely on the relief that Plaintiffs seek. If Plaintiffs only seek to secure total confidentiality for the names of R-71 petition signers, then this relief is clearly no longer available.

As Chief Judge Kozinski has described it, "removing something from the internet is about as easy as removing urine from a swimming pool." Alex Kozinski, *The Dead Past*, 64 Stan. L. Rev. Online 117 (April 12, 2012). However, if instead the Plaintiffs seek to prevent the State of Washington from further disclosing names and information of R-71 petition-signers, then Plaintiffs can still obtain a viable remedy, albeit a much less effective remedy than they originally sought. Supreme Court precedent makes clear that preventing continued disclosure properly describes the remedy Plaintiffs seek here, and thus the case is not entirely moot.

Both the Ninth Circuit and the Supreme Court have recognized that there is not merely a strict dichotomy where privacy is either fully protected or completely irrelevant. Rather, there is a spectrum of remedies available where the Government's "further disclosure" results in "the veil of secrecy [being] lifted higher." *In re Grand Jury Investigation No. 78-184*, 642 F.2d 1184, 1188 (9th Cir. 1981), *aff'd sub nom.*, *United States v. Sells Eng'g Inc.*, 463 U.S. 418, 422 n.6 (1983) ("*Sells*"). Privacy interests can still be protected in degrees by making it more difficult for individuals to access information. *See United States v. Fischbach and Moore, Inc.*, 776 F.2d 839, 844 (9th Cir. 1985) ("[S]ome interest in secrecy survives disclosure." (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979))).

For instance, in *In re Grand Jury Investigation No. 78-184*, the Ninth Circuit heard an appeal from "the district court's order . . . granting the Civil Division . . . access to documents . . . acquired by a federal grand jury" in connection with a criminal investigation. 642 F.2d at 1186. Following the investigation, the Civil Division moved for disclosure of the documents to Civil Division attorneys under Federal Rule of Criminal Procedure 6(e) for possible civil prosecution. *Id*. The district court ruled the Civil Division was entitled to the documents under the rule. *Id*. at 1186-87. Defendants appealed the district court's decision. *Id*. at 1187.

On appeal, the Prosecutor argued that the "appeal [was] moot because many of the . . . materials . . . [had] already been disclosed to Civil Division attorneys." *Id.* The prosecution argued that the "court [would] be powerless to accord relief." *Id.* The Ninth Circuit rejected the Prosecutor's argument, holding that "[t]he controversy here is still a live one. By its terms the disclosure order grants access to all attorneys for the Civil Division, their paralegal and secretarial staff, and all other necessary assistants." *Id.* at 1187-88. The court further noted that "[e]ach day this order remains effective the veil of secrecy is lifted higher by disclosure to additional personnel and by the *continued access* of those to whom the materials have already been disclosed. We *cannot restore the secrecy* that has already been lost *but we can grant partial relief by preventing further disclosure*." *Id.* at 1188 (emphasis added). The Supreme Court affirmed and concluded that the "Court of Appeals correctly rejected the contention" "that the case was moot because the disclosure sought to be prevented had already occurred." *Sells*, 463 U.S. at 422 n.6; *see also Fischbach and Moore, Inc.*, 776 F.2d at 841 n.2 ("[B]ecause of harm caused by continuing disclosure controversy is not moot after initial disclosure."); *United States v. Nix*, 21 F.3d 347, 352 (9th Cir. 1994) (appeal not moot because of "further harm that may occur from future use of the grand jury transcripts").

The Supreme Court also supports this existence of a spectrum of remedies available in *Massachusetts v. E.P.A.*, 549 U.S. 497, 504-14 (2007), where the Court explained that a remedy is available if there is a possibility that the court action would "*slow* or *reduce*" the problem, even if the problem cannot be entirely prevented. *Id.* at 525.

The majority's attempts to distinguish these cases are not persuasive. For instance, the majority explains that in *In re Grand Jury Investigation No. 78-184*, the case was not moot, because not all attorneys, paralegal and staff had seen the material and therefore the court could "grant partial relief by

preventing further disclosure." 642 F.2d at 1188. However, that was not the primary reason the case was not moot. The Ninth Circuit and Supreme Court explained that not only did disclosure to additional personnel constitute an injury, but even the "*continued access* of those to whom the materials ha[d] already been disclosed" constituted an injury. *Id.* (emphasis added).

Similarly, in *Church of Scientology of California v. United States*, the Supreme Court explained that the case was not moot, because the court could "effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession." 506 U.S. 9, 13 (1999). However, in that case, the Supreme Court also said that the Ninth Circuit had inappropriately determined the case was moot, because there was also an injury caused by "the Government's *continued possession* of those materials" which itself constituted an "affront to the taxpayer's privacy." *Id.* (emphasis added). This was true even though it was too late to "prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the tapes." *Id.* Thus, the court explained there that a court need only have an "availability of [a] *possible* remedy" to prevent mootness. *Id.* (emphasis added). Furthermore, even where a court "may not be able to return the parties to the *status quo ante* . . . a court can fashion *some* form of meaningful relief." *Id.* at 12.

Moreover, even if this precedent did stand for the proposition that a case is not moot only if disclosure to additional parties can be prevented by the government, the majority mistakenly assumes that every person in the United States or the State of Washington has access to a computer to search for these petitions. Though widespread internet access is available to the public, the fact remains that twenty percent of the national population and almost twelve percent of Washington State's population did not have access to the internet in 2010.[1]

---

[1]United States Census Bureau, Internet Access and Usage: 2010, available at http://www.census.gov/compendia/statab/2012/tables/12s1157.pdf.

There are likely still other individuals who would not know where to look for these petitions on the internet. Certainly preventing further government disclosure to individuals without access or desire to download petitions from non-government websites will *"slow* or *reduce"* the dissemination of potentially private information. *Massachusetts,* 549 U.S. at 525. Because the majority can only speculate as to who is able and willing to access these petitions, the majority cannot say that no "possible remedy" is available in the form of preventing further government disclosures of Plaintiffs' identities. *Church of Scientology of California*, 506 U.S. at 13. Thus, we are required to address the merits.

The majority also attempts to distinguish this situation based on the fact that some parties (who have access to confidential information) are not before the court. However, after *Sells* holding that "further disclosure" results in "the veil of secrecy [being] lifted higher," 463 U.S. at 422 n.6, the only two cases to address the issue of whether third party access to confidential documents moots the case have determined that the reasoning of *Sells* applies in full force. *See United States v. Smith*, 123 F.3d 140, 143, 145 (3d Cir. 1997); *Detroit Int'l Bridge Co. v. Fed. Highway Admin.*, 666 F. Supp. 2d 740, 742-45 (E.D. Mich. 2009).

In *Smith*, several newspapers sought access to court records in a criminal case. 123 F.3d at 143. At the sentencing stage, the government inadvertently disclosed grand jury secrets in its memorandum. *Id.* The court sealed the memorandum and ordered briefing and a hearing to address the extent the memorandum contained secret grand jury material. *Id.* Newspapers intervened and moved for access to the memorandum and proceedings regarding it. *Id.* The district court denied the motion, and the newspapers appealed. *Id.*

The newspapers argued that, because the information was "no longer secret," there was no longer a reason to protect it from further disclosure. *Id.* at 154. The Third Circuit

explained: "we cannot agree with the newspapers' contention that grand jury material . . . once disclosed, even if inadvertently, is no longer subject to the protections of Rule 6(e)." *Id.* "At bottom, it is clear to us that a court is simply not powerless, in the face of an unlawful disclosure of grand jury secrets, to prevent all further disclosures by the government of those same jury secrets. In other words, even if grand jury secrets are publicly disclosed, they may still be entitled to at least some protection from disclosure." *Id.* The court made this determination despite the fact that its order barring future disclosure to the newspapers could not "effectively bar further dissemination of any potential grand jury secrets by members of the public who possess[ed] the sentencing memorandum." *Id.* at 155. Hence, relief was still possible, because the court could "at least narrow that dissemination" "[e]ven if the dissemination by members of the public continues." *Id.*[2] Contrary to the majority's assertion, this reasoning is not dicta, but was in fact central to one of the Third Circuit's holdings.

Similarly, the Eastern District of Michigan held that a case seeking to prevent the release of a report to a congressman was not moot even after the defendant released the report to the congressman. *Detroit Int'l Bridge Co.,* 666 F. Supp. 2d at 742-45. The court concluded that, even though it was "doubtful of its ability to offer an effective or meaningful remedy," it was required to address the merits since potentially "*some* form of meaningful relief" could be provided. *Id.* at 745 (internal quotation marks omitted).

In response to this precedent, the majority relies primarily on *C & C Prods., Inc. v. Messick,* 700 F.2d 635, 636-37 (11th Cir. 1983), for the proposition that a case becomes moot once

---

[2]Notably, in *Smith*, the court determined that the newspaper's separate claim seeking access to materials was moot, because Newspapers were just asking for access to documents and they had received it. This is different from the reverse situation, where an individual is suing to stop the continuing disclosure of its identity by the government to additional parties.

third parties have control over a confidential document. However, *Messick* was decided before the Supreme Court's decision in *Sells*, leaving *Messick* as questionable precedent. Furthermore, *Messick* is distinguishable, because the access to confidential discovery materials had only been granted to one party, who had received the materials, and the trial in which the materials had been used was complete. *Id.*

While the majority is incorrect that the lesser practical remedy available in this case makes the issue moot, the majority's concerns about the practical effect of the past disclosure of Plaintiffs identities is still relevant to the First Amendment balancing analysis under the merits, discussed in Part III.

## II. Standing

As a general rule, an individual has standing if they "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

In this case, the named Plaintiffs have standing to pursue this case on their own behalf, as well as on behalf of R-71 petition signers not before the court. For the same reason that this case is not moot, and there is some remedy still available, the Plaintiffs have also suffered a cognizable, redressable injury giving rise to standing. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (describing mootness as "the doctrine of standing set in a time frame").

The injury here is not limited to the fact that the public knows Plaintiffs' identities, but includes the injury that the government forced the speaker to disclose their identities and that the disclosure and access to those identities continues. The Supreme Court has noted that forced disclosure is a burden on speech, and thus this constitutes a sufficient injury for standing. *See Doe v. Reed*, 130 S. Ct. 2811, 2818 (2010)

(explaining that disclosure requirements "burden the ability to speak" and thus must survive "exacting scrutiny" (internal quotation marks omitted)); *see also Buckley v. Valeo*, 424 U.S. 1, 64, 68 (1976) ("It is undoubtedly true that public disclosure of contributions to candidates and political parties will deter some individuals who otherwise might contribute. In some instances, disclosure may even expose contributors to harassment or retaliation. *These are not insignificant burdens on individual rights*." (emphasis added)); *Citizens United v. Fed. Election Comm'n*, 130 S. Ct 876, 898, 914 (2010) ("Disclaimer and disclosure requirements may burden the ability to speak . . . ."). In other words, even if the named Doe Plaintiffs are still willing to publicly speak, that doesn't mean they have not experienced an injury through a government-imposed burden on that speech. A ruling in Plaintiffs' favor could redress this injury by preventing further government-imposed disclosure of Plaintiffs' identities.[3]

---

[3]Plaintiffs did not argue that committee-plaintiff Protect Marriage has third party standing on behalf of R-71 petition signers, but Plaintiffs did argue that the named Doe Plaintiffs have third-party standing on behalf of other R-71 petition-signers. A prudential principle of standing is that "[i]n the ordinary case, a party is denied standing to assert the rights of third persons." *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977). However, courts will allow an exception to the third-party standing prohibition in situations where (1) the litigant suffered some sort of injury-in-fact, (2) there exists some sort of relationship between the litigant and the person whose rights the litigant seeks to assert, and (3) some obstacle hinders the speaker's ability to assert personal rights. *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

As discussed above, the named Doe Plaintiffs have suffered an injury, and the named Doe Plaintiffs also likely meet the relationship requirement, because they engaged in the same act of political expression as other signers and are thus "fully, or very nearly, as effective as a proponent of the right[s]" of third parties. *Singleton v. Wulff*, 428 U.S. 106, 114-15 (1976). The most difficult argument for the named Doe plaintiffs to overcome is that there is no real hindrance preventing other R-17 petition signers from asserting their own rights. The obstacle of wanting to protect one's identity is not an insurmountable obstacle. *See Doe v. Bolton*, 410 U.S. 179, 187 (1973). However, the fact that the obstacle is not insur-

### III.    Merits of Plaintiffs As-Applied Challenge

To counter the argument regarding mootness, Plaintiffs admit that the government action at issue in this case is not the full disclosure of the petition-signer's identities, but is rather the "continued disclosure" of the signers' already disclosed identities. Appellants' Br. 57 n.25. Yet Plaintiffs' arguments regarding the merits of the burden on their First Amendment rights is incongruent with the mootness argument, because it discusses a burden caused by the government action of disclosing identities *at all*. Plaintiffs cannot have it both ways. If Plaintiffs seek to prevent further disclosure of their already disclosed names, then the only evidence relevant to Plaintiffs' prima facie showing is the "actual burden" resulting from continued disclosure of already disclosed names, rather than a hypothetical burden resulting from disclosure in general. *See Family PAC v. McKenna*, 685 F.3d 800, 806 (9th Cir. 2012); *see also Buckley*, 424 U.S. at 68 (looking "to the extent of the burden that" the specific government action at issue "place[d] on individual rights").

For instance, in *Brock v. Local 375, Plumbers International Union of America*, the government began an investigation of a Fund associated with a union, and the government also issued subpoenas to the Fund seeking financial records explaining the sources of its funding, which would reveal names of contributors. 860 F.2d 346, 348-350 (9th Cir. 1988). The Fund challenged the subpoenas and argued that the information sought would "chill" First Amendment association rights of the Fund's members. *Id.* at 349. The district court

mountable does not mean that there will be no recognizable chilling effect on speech. In *Singleton*, the Court recognized that a woman's desire to protect the " very privacy of her decision from the publicity of a court suit" was a genuine obstacle. 428 U.S. at 116. Nevertheless, because the named Doe Plaintiffs have standing to bring this case on their own, I need not determine whether they also have third-party standing on behalf of other R-71 petition signers.

concluded as a legal matter that the Fund did not qualify as an association that could assert First Amendment rights. *Id.*

On appeal, we held that the Fund did qualify as an association that could assert First Amendment rights. *Id.* at 349. However, we also explained that the Fund "must demonstrate to the district court, *on remand*, a 'prima facie showing of arguable first amendment infringement.' " *Id.* at 349-50 (emphasis added) (quoting *United States v. Trader's St. Bank*, 695 F.2d 1132, 1133 (9th Cir.1983)). We later explained that as part of its prima facie showing, the Fund "must demonstrate a causal link between the disclosure and the prospective harm to associational rights." *Dole v. Local Union 375, Plumbers Int'l Union of Am.*, 921 F.2d 969, 972 (9th Cir. 1990).

After the case had been remanded and was again before us on appeal, we determined that the Fund had failed to provide a "causal explanation" for why the "enforcement of the subpoenas will cause harm to [the Fund's] contributors' associational rights." *Id.* The Fund had demonstrated a "decrease in annual contributions" and argued that this was evidence of a chilling effect. *Id.* However, we explained that "[t]o the extent there has been a 'chill' in affiliations with the Fund, the affidavit provides the court no assistance in allocating responsibility for that chill between the general investigation (the propriety of which the parties do not contest here) and the *particular threat of disclosure* of contributors' names through the subpoenas." *Id.* (emphasis added). Thus, we held that the Plaintiffs failed to make a prima facie showing, because the "Fund established no causal nexus between the threatened enforcement of the subpoenas," which was the specific government action at issue, "and a decline in contributions." *Id.* at 974; *see also St. German of Alaska E. Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1093 (2d Cir. 1988) (the Church did not present a prima facie case of first amendment infringement because such allegations "[did] not estab-

lish that the IRS investigation is the *cause* of these problems" (emphasis added)).

Similarly here, Plaintiffs fail to provide any link between the harms they allege and how those harms will likely be caused by the specific government action at issue: the continued disclosure of already disclosed names. As in *Brock*, Plaintiffs were instructed to develop further evidence on remand to make the necessary showing for their as-applied challenge. *See Doe*, 130 S. Ct. at 2824 (Alito, J., concurring) (referring to the "harassment suffered by Proposition 8 supporters," but noting that "when plaintiffs return to the District Court, they will *have the opportunity to develop evidence* of intimidation and harassment of Referendum 71 supporters" (emphasis added)). Not only did Plaintiffs choose to rely primarily on past evidence of threats and reprisals, rather than more current evidence taking account of changed circumstances, Plaintiffs' arguments on the merits before this court entirely fail to account for the fact that, due to Plaintiffs' tactical error, the district court has already released their identities. Thus, the only government action now at issue is whether the State of Washington can *continue* to disclose these names. As in *Brock*, Plaintiffs have failed to connect their evidence of a First Amendment burden to this specific government action or to demonstrate the likelihood of any "actual burden" caused by this fairly modest government action. *Family PAC*, 685 F.3d at 806 ("To survive exacting scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." (internal quotation marks omitted)); *accord Davis v. FEC*, 554 U.S. 724, 744 (2008). Thus, Plaintiffs have not made a prima facie showing of First Amendment infringement.

Furthermore, even if we were dealing with the full government action of complete disclosure of petition-signers' identities (which is causally linked to the burdens that Plaintiffs are alleging), Plaintiffs' as-applied challenge would still fail. The Supreme Court has made clear that, when the government

burdens First Amendment rights by compelling disclosure, the governmental interest must be "sufficiently important to outweigh the possibility of infringement," and there must be a " 'substantial relation' between the governmental interest and the information required to be disclosed." *Buckley*, 424 U.S. at 64, 66. However, in Supreme Court's most recent decision in this case, at least five Justices seemed to conclude that the State of Washington's government interest in preventing fraud and upholding the integrity of the election system was of a sufficient magnitude and substantially related to the government action at issue. *See Doe*, 130 S. Ct. 2828 (Sotomoyer, J., concurring) ("It is by no means necessary for a State to prove that such 'reasonable, nondiscriminatory restrictions' are narrowly tailored to its interests."); *id.* at 2830 (Stevens, J., concurring) ("In this case, the State has posited a perfectly adequate justification: an interest in deterring and detecting petition fraud."); *id.* at 2837 (Scalia, J., concurring) ("[H]arsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance.").

Thus, given the Court's view of this governmental interest, one must determine whether this governmental interest "outweigh[s] the possibility of infringement." *Buckley*, 424 U.S. at 66. The Supreme Court in *Doe* affirmed the *Buckley* standard that "those resisting disclosure can prevail under the First Amendment if they can show 'a reasonable probability that the compelled disclosure [of personal information] will subject them to threats, harassment, or reprisals from either Government officials or private parties.' " *Doe*, 130 S. Ct. 2828 (quoting *Buckley*, 424 U.S. at 74). However, the concurrences in *Doe*, as well as later precedent from our Circuit, shed light on what type of showing of threats and reprisals is required to meet this standard where the plaintiff is not a minor party.

We explained in *Family PAC* that an as applied challenge in this circumstance would be successful if Plaintiffs made a showing that one of two types of burdens on First Amend-

ment rights had a reasonable probability of occurring: First, if the disclosure laws "deter individuals who would prefer to remain anonymous" from participating in the ballot measure. 685 F.3d at 806; *Buckley*, 424 U.S. at 68, 70 ("It is undoubtedly true that public disclosure of contributions to candidates and political parties will deter some individuals who otherwise might contribute . . . . In some instances fears of reprisal may deter contributions to the point where the movement cannot survive."); *Doe*, 130 S. Ct. at 2831 (Stevens, J., concurring) (explaining that in "rare case[s]," there may be a successful as-applied challenge where the "level of threat . . . would substantially limit a group's ability to 'garner the number of signatures necessary to place [a] matter on the ballot' "). Second, we explained that an as-applied challenge could also be successful if Plaintiffs demonstrated a reasonable probability that disclosure requirements would chill First Amendment activity by "exposing [members] to retaliation." *Family PAC*, 685 F.3d at 807; *accord Citizens United*, 130 S. Ct. at 916. Plaintiffs have not demonstrated that either type of burden will occur in this case.

For a deterrence showing, Plaintiffs only provided the deposition of a single witness, in which the witness stated that unnamed individuals told him they would have signed the R-71 petition, but they did not want to leave their names on the petition. Plaintiffs did not present evidence demonstrating a systematic deterrence effect occurring in Washington or to similarly situated groups. Thus, Plaintiffs failed to meet our requirement that "a prima facie case of infringement on associational rights cannot rest upon 'casual reference[s]' to, let alone unarticulated implications of, a decline in membership. A prima facie showing entails, instead, 'a *careful documentation*' of membership decline . . . ." *Dole*, 921 F.2d at 973 (alteration in original) (emphasis added) (quoting *Master Printers of Am. v. Donovan*, 751 F.2d 700, 705 (4th

Cir.1984)). As in *Dole*, this is "something wholly lacking from the [Plaintiffs'] evidence." *Id.*[4]

For a threat and retaliation showing, Plaintiffs have not made "the particularized showing required by Supreme Court precedent" that disclosure of R-71 petition signers is reasonably likely to result in petition signers being subject to retaliation. *Family PAC*, 685 F.3d at 808. Though R-71 petitions have been available for three months, Plaintiffs have presented no evidence of an R-71 signer being threatened or harassed as a result of that disclosure. When the district court ordered Plaintiffs to submit supplemental summary judgment briefing providing evidence that any R-71 signer had been harassed or threatened, Plaintiffs responded that "there is no such evidence." In oral argument, when asked about this evidence, Plaintiffs admitted that no campaign of intimidation has been waged, or appears likely to be waged, against R-71 petition signers in Washington. In view of these admissions, evidence of threats to more public individuals or individuals in other states is less persuasive, and "the record here does not reflect the kind of focused and insistent harassment of contributors and members" required in *Buckley*, 424 U.S. at 72 (internal quotation mark omitted).

Furthermore, Justices Ginsburg, Breyer, Sotomayor, and Stevens indicated that evidence of retaliation would be particularly persuasive if it rose to the level of not only serious

---

[4]This hearsay testimony also fails to comply with our Circuit's requirement that evidence of deterence be tested by "evidentiary rigors." *See Family PAC*, 685 F.3d at 807 & n.4. ("[A]lthough Family PAC cites a survey conducted in six states (not including Washington) purporting to show that people may 'think twice' about contributing to ballot measure committees if their names and addresses are to be publicly disclosed, Family PAC has not presented evidence suggesting that Washington's disclosure laws actually and meaningfully deter contributors, . . . [because the] was neither presented as evidence nor tested by the evidentiary rigors that apply to expert reports . . . [and the survey offered] little insight into the deterrent effect of Washington's disclosure requirements.").

harassment, but of law enforcement that is unwilling or unable to control the harassment. *See Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring); *id.* at 2831 (Stevens, J., concurring).[5]

Plaintiffs present no evidence that this type of law enforcement failure occurred. Instead, Plaintiffs present evidence that demonstrates satisfactory aid from law enforcement. For instance, after one witness received a death threat, "she called the police about the threat and it was handled without further incident." *Doe v. Reed*, 823 F. Supp. 2d 1195, 1208 (W.D. Wash. 2011). Similarly, when another witness received threats of violence to his family, he "contacted the police who said they would investigate the matter." *Id.* at 1209. These facts stand in stark contrast to the behavior of police in *Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, 459 U.S. 87 (1982), where there was government hostility to the political group and police harassment of a party candidate.

When considering the burdens on First Amendment rights demonstrated by Plaintiffs, *Family PAC*, 685 F.3d at 808, Supreme Court precedent indicates that the State of Washington's government interest in preventing fraud and upholding the integrity of the election system was sufficient in this case to "justify the [disclosure] requirements," *Buckley*, 424 U.S. at 68. Thus, Plaintiffs as-applied challenge fails.

---

[5]When combined with Justice Scalia's vote in favor of never granting as-applied challenges, *id.* at 2837 (Scalia, J., concurring), there may be five Justices that would be persuaded by this evidence for one type of successful showing of a First Amendment burden.